United States District Court
Southern District of Texas
**ENTERED**
October 19, 2018
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GIOVANI ALEXANDER<br>MARTINEZ-PILIA,<br>Movant, | §<br>§<br>§<br>§ | |
| v. | §<br>§ | Civil Action No. 1:17-cv-144 |
| UNITED STATES OF AMERICA,<br>Respondent. | §<br>§<br>§ | |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

The Court is in receipt of Giovanni Alexander Martinez-Pilia's pro se 28 U.S.C.

§ 2255 Motion (hereinafter, Martinez-Pilia's "Motion" or "§ 2255 Motion").  Dkt. No.

1.  The Government has filed a Memorandum in Response to Martinez-Pilia's § 2255

Motion, arguing that Martinez-Pilia's claims should be dismissed.  Dkt. No. 25 at 9-

25.  As detailed below, it is recommended that the Court **DISMISS** Martinez-Pilia's

Motion with prejudice and **DECLINE** to issue a certificate of appealability.

## I. Jurisdiction

This Court has jurisdiction over Martinez-Pilia's § 2255 Motion pursuant to 28

U.S.C. § 1331 and § 2255.

## II. Background

On February 9, 2017, Martinez-Pilia pleaded guilty, without a plea agreement,

to being an "alien unlawfully found in the United States after deportation, having

previously been convicted of a felony," in violation of 8 U.S.C. § 1326(a), and

§ 1326(b)(1).  *See United States of America v. Giovanni Alexander Martinez-Pilia*, No.

1:16-cr-01140-1, Minute Entry dated February 9, 2017, and Dkt. No. 22 at 1.[1]  On

May 24, 2017, United States District Judge Rolando Olvera sentenced Martinez-Pilia

to 38 months of imprisonment.  CR Dkt. No. 22 at 1-3.  Judgment was entered on

May 25, 2017.  *Id.*  Martinez-Pilia did not appeal.  Dkt. No. 1 at 1.

Martinez-Pilia filed his instant timely § 2255 Motion on July 9, 2017.  Dkt. No.

1 at 13.[2]  His handwritten claims are somewhat difficult to decipher because they are

illegible and overlapping in places.  *Id.* at 4-11.  Primarily, he challenges the

performance of his defense counsel, Sandra Zamora Zayas, during his criminal

proceedings.  *Id.*[3]  He also claims that his guilty plea was not voluntary due to Zayas's

ineffectiveness, and his limited understating of the English language and the law.

*Id.*[4]

---

[1] Hereinafter, Martinez-Pilia's criminal case docket entries ("CR Dkt. Nos.") will be referred to only by their docket entry numbers.

[2] Martinez-Pilia indicates that he gave his § 2255 Motion to prison authorities for mailing on July 9, 2017.  Dkt. No. 1 at 13.  The Court will consider his Motion filed on that date.  *See generally Spotsville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (noting that, for statute of limitations purposes, a pro se prisoner's application is filed on the day it is placed in the prison mailing system); *United States v. Young*, 966 F.2d 164, 165 (5th Cir. 1992) (applying the mailbox rule to pro se prisoner proceedings under 28 U.S.C. § 2255).

[3] Martinez-Pilia's § 2255 Motion incorrectly refers to his defense counsel a "he."  Dkt. No. 1 at 4-5, 11.  But, as discussed more fully below, Zayas represented Martinez-Pilia throughout his criminal proceedings and during all critical stages of those proceedings.  *See generally* Dkt. No. 20.

[4] Martinez-Pilia's records reveal that he was provided with an interpreter during his court proceedings.  *See* CR Minute Entries dated December 12, 2016; January 5, 2017; February 3, 2017; February 9, 2017; May 24, 2017.  Additionally, Zayas has submitted a signed, sworn affidavit wherein she states that her conversations with Martinez-Pilia "were entirely in the Spanish language[.]" Dkt. No. 20 at p. 13 ¶ 33.

On September 22, 2017, the Government filed a motion seeking a court order directing Zayas to file an affidavit addressing Martinez-Pilia's claims. Dkt. No. 10. The Court granted this motion and ordered the Clerk of the Court to send the affidavit to Martinez-Pilia upon its filing. Dkt. Nos. 13 and 21. Zayas filed a signed, sworn affidavit along with accompanying exhibits on November 3, 2017. Dkt. Nos. 20 and 20-1. The Clerk of the Court sent a copy of Zayas's affidavit to Martinez-Pilia as directed. Dkt. No. 22.

The Government filed a Memorandum in Response to Martinez-Pilia's § 2255 Motion (hereinafter, the Government's "Response") on December 8, 2017. Dkt. No. 25. The Government states that Martinez-Pilia's Motion lacks merit and should be dismissed with prejudice. *Id.* at 9-25. Despite being notified of his opportunity to respond (*see* Dkt. Nos. 4 and 26), Martinez-Pilia has not filed a reply to the Government's Response.

### III.  Legal Standards

**28 U.S.C. § 2255.**  Pursuant to 28 U.S.C. § 2255, a defendant may move to vacate, set aside or correct his sentence if: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the district court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). The nature of a § 2255 collateral challenge is extremely limited, being reserved for instances of constitutional or jurisdictional magnitude. *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). If an error is not of

constitutional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

**Ineffective Assistance of Counsel.** The "Sixth Amendment guarantees a[ll] defendant[s] the right to have counsel present at all 'critical' stages of the criminal proceedings" instituted against them. *Missouri v. Frye*, 566 U.S. 134, 140 (citing *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)). Critical stages include not only trial, but also pretrial proceedings — including the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing is also constitutionally impermissible. *Lafler*, 566 U.S. 156. The constitutional standard for determining whether a criminal defendant has been denied effective assistance of counsel at any of the critical stages mentioned above was announced by the Supreme Court in *Strickland v. Washington*:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. 668, 687 (1984).

In order to demonstrate that his attorney's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below

an objective standard of reasonableness." *See Williams v. Taylor*, 529 U.S. 362, 390-91 (2000); *Darden v. Wainwright*, 477 U.S. 168, 184 (1986); *Strickland v. Washington*, 466 U.S. at 687-88; *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997); *Andrews v. Collins*, 21 F.3d 612, 621 (5th Cir. 1994). A convicted defendant carries the burden of proof and must overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 687-91; *Jones v. Cain*, 227 F.3d 228, 230 (5th Cir. 2000); *Green v. Johnson*, 160 F.3d 1029, 1036 n.1 (5th Cir. 1998); *Burnett v. Collins*, 982 F.2d 922, 928 (5th Cir. 1993).

In reviewing counsel's performance, the Court must be "highly deferential," making every effort "to eliminate the distorting effects of hindsight," and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution. *Id.* In order to establish that he sustained prejudice, the convicted defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Williams v. Taylor*, 529 U.S. 362, 391; *Strickland*, 466 U.S. at 694.

The prejudice prong of *Strickland* focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. "Unreliability or unfairness does not result if the

ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Williams*, 529 U.S. at 393 n. 17; *Strickland*, 466 U.S. at 692.

Because a convicted defendant must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance or actual prejudice under that test will ordinarily make it unnecessary to examine the other prong. *See Strickland*, 466 U.S. at 700; *Ransom v. Johnson*, 126 F.3d at 716, 721 (5th Cir. 1997); *United States v. Seyfert*, 67 F.3d 544, 547 (5th Cir. 1995); *Armstead v. Scott*, 37 F.3d 202, at 210 (5th Cir. 1994). Therefore, failure to establish that counsel's alleged performance fell below an objective standard of reasonableness renders moot the issue of prejudice. *See United States v. Hoskins*, 910 F.2d 309, 311 (5th Cir. 1990); *Thomas v. Lynaugh*, 812 F.2d 225, 229-30 (5th Cir. 1987). It is also generally unnecessary to consider whether counsel's performance was deficient where there is an insufficient showing of prejudice. *See Black v. Collins*, 962 F.2d at 401; *Martin v. McCotter*, 796 F.2d 813, 821 (5th Cir. 1986).

## IV. Discussion

Liberally construed, Martinez-Pilia's § 2255 Motion contains the following claims:

A.    Due to Zayas's ineffectiveness and his limited understanding of English and the law, he signed a plea agreement which required him to forfeit his rights to seek appellate and collateral relief;

B.    Zayas performed ineffectively by failing to discuss his appellate rights with him;

C.      Zayas performed ineffectively by failing to discuss the case with him, and by failing to discuss it in a way that would allow him to understand his proceedings given his limited understanding of English and the law;

D.      Zayas performed ineffectively by promising him that he would get a lower sentence if he agreed to plead guilty;

E.      Zayas performed ineffectively by failing to file a motion to get his sentence reduced;

F.      Due to his limited understanding of English and the law, and due to Zayas's ineffectiveness, he did not receive a fast-track policy reduction in his sentence.

Dkt. No. 1 at 4-11.[5] For the reasons provided below, these claims lack merit and are subject to dismissal with prejudice.

**A. Martinez-Pilia's claim regarding his alleged forfeiture of the right to appeal and seek collateral relief.** Martinez-Pilia asserts that, due to Zayas's ineffectiveness and his limited understanding of English and the law, he signed a plea agreement which required him to forfeit his rights to seek appellate and collateral relief. Dkt. No. 1 at 5-6.

> MY LAWYER NEVER HELPED ME IN ANY WAY. HE PUSHED ME ONLY TO SIGN A GUILTY PLEA HE NEVER WENT TO DISCUSS MY CASE I DID KNOW THE DAY OF MY SENTENCING UNTIL I WAS PHYSICALLY IN THE COURT ROOM. I DID NOT KNOW THAT BY SIGNING THE PLEA I WAS GIVING UP MY APPEAL RIGHTS AND MOST RIGHTS TO COLLATERAL ATTACK.

*****

---

[5] Because Martinez-Pilia's claims are somewhat illegible and intertwined, it is not clear if he intended to raise each of these claims as a separate ground for relief. Nevertheless, the Court broadly construes his claims so as to leave no intended claim unaddressed.

> DUE TO MY LIMITED KNOWLEDGE OF ENGLISH AND THE LAWS, I WENT TO COURT WITHOUT THE FULL ******6 HAPPENING BECAUSE OF MY LIMITED KNOWLEDGE OF ENGLISH AND THE LAWS AND THAT COMBINED WITH THE POOR LEGAL ADVICE MADE ME FORFEIT MY APPEAL RIGHTS AND OTHER FORMS OF RELIEF BY SIGNING THE PLEA WITH A WAIVER OF THOSE BENEFITS.

*Id.* (errors in original, formatting altered).[7]

Martinez-Pilia's records reveal that he did plead guilty, but he did not sign or otherwise enter into a plea agreement with the Government. *See* CR Minute Entry dated February 9, 2017 (noting that Martinez-Pilia entered a "cold" plea); CR Dkt. No. 27 at 15 (transcript of Martinez-Pilia pleading guilty at re-arraignment). Zayas notes in her affidavit that the Government offered to enter into a plea agreement with Martinez-Pilia, but he rejected the offer. Dkt. No. 20 at p. 6 ¶ 11, p. 8 ¶ 16. Martinez-Pilia has produced no facts or evidence of his own to contradict this record evidence. Accordingly, he has not shown that he entered into a plea agreement that required him to forfeit his rights to seek appellate and collateral relief.

Relatedly, Martinez-Pilia has not shown that he otherwise forfeited, or agreed to forfeit, his right to seek appellate and collateral relief. He has filed his instant § 2255 Motion without obstacle, and this Court is addressing his Motion on the merits. Zayas's affidavit also reveals that she met with Martinez-Pilia immediately

---

6   In quoting Martinez-Pilia, the Court uses asterisks to mark the places where his handwriting is illegible.

7   Although Martinez-Pilia utilizes a masculine pronoun to refer to his counsel, Zayas represented Martinez-Pilia throughout his criminal proceedings and during all critical stages of those proceedings. *See generally* Dkt. No. 20. As discussed more fully below, two male attorneys from Zayas's office each met with Martinez-Pilia once. *Id.* at p. 4, ¶ 7; p. 7, ¶¶ 14-15. However, Martinez-Pilia does not mention these attorneys by name or otherwise indicate that his ineffective assistance of counsel claims concern them, rather than Zayas.

after he was sentenced and informed him of his right to appeal. Dkt. No. 20 at p. 10 ¶ 22. After discussing his rights with Zayas, Martinez-Pilia stated that he did not wish to appeal. *Id.* Zayas documented Martinez-Pilia's decision not to appeal in a form entitled "Decision Regarding My Appeal" (hereinafter, "DRA Form"). Dkt. No. 20-1 at 85.[8]

The DRA Form Zayas gave Martinez-Pilia explained his rights in English and Spanish. Dkt. No. 20-1 at 85. Recreated in English below, Martinez-Pilia's DRA Form shows that he initialed on the line provided for defendants who "DO NOT want to appeal[.]" *Id.* In signing the DRA Form, he also acknowledged that Zayas had informed him of his appellate rights. *Id.*

> I understand that I have the right to appeal the conviction and sentence in this case and to have the assistance of appointed counsel on appeal. I understand that I do not have to pay for the appeal. I understand that if I want to appeal, I must notify the court within fourteen days of entry of judgment in my case. Having discussed my appeal rights with my attorney, I make the following decision with regard to my appeal:
>
> [WRITE YOUR INITIALS NEXT TO **ONE** CHOICE ONLY]
>
> GAPM  I DO NOT want to appeal
>
> _____  I wish to appeal my SENTENCE ONLY
>
> _____  I wish to appeal my CONVICTION and SENTENCE.
>
> Further, I authorize my attorney to file this document in the public record of the court.
>
> Giovanni Alexander Martinez-Pilia  Sandra Zamora Zayas
> DEFENDANT SIGNATURE    WITNESS SIGNATURE

---

[8] The Federal Public Defenders in this Division utilize DRA forms to memorialize: (1) their consultations with their client's regarding the right to appeal; and (2) their client's decisions regarding appeal.

DATE: <u>May 24, 2017</u>            DATE: <u>May 24, 2017</u>

*Id.* (emphasis in original, formatting altered).

Martinez-Pilia's DRA Form documented his decision not to appeal, but nothing in the Form bound him to his decision or stated that he could not change his mind. *See* Dkt. No. 20-1 at 85. The Government asserts that this evidence demonstrates that Martinez-Pilia's claim lacks merit. Dkt. No. 25 at 21-22. Martinez-Pilia has not filed a reply to the Government's Response, despite being notified of his opportunity to do so. *See* Dkt. Nos. 4 and 26. Having failed to contradict the above-discussed evidence discussed with any facts or evidence of his own, Martinez-Pilia's claim is conclusory, refuted by the record, and subject to dismissal. *See Ross v. Estelle,* 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."); *Miller v. Johnson,* 200 F.3d 274, 282 (5th Cir. 2000) (conclusory allegations of deficient performance and prejudice do not satisfy *Strickland's* two-pronged test); *United States v. Fields,* 565 F.3d 290, 298 (5th Cir. 2009) ("If, on the record before us, 'we can conclude as a matter of law that [the petitioner] cannot establish one or both of the elements necessary to establish his constitutional claim, then an evidentiary hearing is not necessary[.]'") (citing *United States v. Walker,* 68 F.3d 931, 934 (5th Cir. 1995)); *Sevim v. United States,* 16-CR-266-SS, 2018 WL 4762140, at *3 (W.D. Tex. Oct. 1, 2018) ("Conclusory allegations of ineffective assistance of counsel are insufficient to warrant an evidentiary hearing or

to support relief pursuant to section 2255.") (citing *United States v. Demik*, 489 F.3d 644, 647 (5th Cir. 2007)).

**B. Martinez-Pilia's claim that Zayas performed ineffectively by failing to discuss his appellate rights with him**. Martinez-Pilia repeatedly states that he did not file an appeal because Zayas failed to inform him of his appellate rights. Dkt. No. 1 at 3, 4, 5, 6, 7, 8, 10. Aside from incorrectly stating that he signed a plea agreement which required him to forfeit his right to appeal, Martinez-Pilia does not provide any additional facts in support of this claim. Zayas's affidavit and Martinez-Pilia's DRA Form contradict his claim. *See* Dkt. No. 20 at pgs. 10-14; Dkt. No. 20-1 at 85. Martinez-Pilia has not undermined or contradicted his DRA Form or Zayas's affidavit with any facts or evidence. Accordingly, his claim is conclusory, refuted by the record, and subject to dismissal. *See Ross v. Estelle,* 694 F.2d 1008, 1011 ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."); *Miller v. Johnson,* 200 F.3d 274, 282 (conclusory allegations of deficient performance and prejudice do not satisfy *Strickland's* two-pronged test); *United States v. Fields*, 565 F.3d 290, 298 ("If, on the record before us, 'we can conclude as a matter of law that [the petitioner] cannot establish one or both of the elements necessary to establish his constitutional claim, then an evidentiary hearing is not necessary[.]'") (citing *United States v. Walker*, 68 F.3d 931, 934); *Sevim v. United States*, 2018 WL 4762140, at *3 ("Conclusory allegations of ineffective assistance of counsel are insufficient to

warrant an evidentiary hearing or to support relief pursuant to section 2255.") (citing *United States v. Demik*, 489 F.3d 644, 647).

**C. Martinez-Pilia's claim that Zayas performed ineffectively by failing to discuss his case with him, and by failing to discuss it in a way that would allow him to understand his proceedings given his limited understanding of English and the law.** Martinez-Pilia asserts that Zayas failed to keep him informed and failed to discuss his case with him in a way that he could understand. Dkt. No. 1 at 5-6, 8-10. Aside from stating that Zayas failed to inform him of his sentencing date prior to the day he was sentenced, he does not provide any additional facts in support of this claim. *Id.*

Martinez-Pilia's records reveal that he was provided with an interpreter during his court proceedings. *See* CR Minute Entries dated December 12, 2016; January 5, 2017; February 3, 2017; February 9, 2017; May 24, 2017. In her affidavit, Zayas notes that her conversations with Martinez-Pilia "were entirely in the Spanish language," and that she believed "he understood every single word[.]" Dkt. No. 20 at p. 13 at ¶ 33. Zayas's affidavit additionally provides as follows:

1. Zayas met with Martinez-Pilia and discussed his case on eight separate occasions. Dkt. No. 20 at pgs. 1-10. Supervisor Assistant Federal Public Defender Jeffrey Wilde met with Martinez-Pilia once at her request when she was on leave from December 23, 2016 to January 5, 2017. *Id.* at p. 4 ¶ 7. When Martinez-Pilia learned that he was facing a possible sentence in excess of 57 months of imprisonment, he stated that the estimated sentence was too long. *Id.* at pgs. 4-7.

Martinez-Pilia asked the Court to provide him with new counsel, but the Court denied his request. *Id.* at p. 7, ¶ 14.

2.  Despite the Court's refusal to provide Martinez-Pilia with new counsel, Zayas asked Assistant Federal Public Defender Cesar Amador to meet with Martinez-Pilia. Dkt. No. 20 at p. 7, ¶ 14. Amador met with Martinez-Pilia and reported that Martinez-Pilia continued to believe that he was facing "too much time." *Id.* at ¶ 15. Zayas met with Martinez-Pilia prior to his re-arraignment and discussed his options. *Id.* at ¶ 16. After speaking with Zayas, "Martinez-Pilia chose to plead guilty without the benefit of a plea agreement." *Id.*

Prior to pleading guilty at his re-arraignment, Martinez-Pilia confirmed under oath that he was fully satisfied with Zayas's representation. Dkt. No. 27 at 6. Zayas's detailed affidavit contradicts Martinez-Pilia's claim that she failed to adequately counsel him regarding his proceedings and rights. *See generally* Dkt. No. 20. Zayas supports her affidavit with 90 pages of exhibits, which corroborate her statements. *See* Dkt. No. 20-1. Martinez-Pilia has provided no facts or evidence to contradict Zayas's testimony, or the Government's reliance upon that testimony. As such, Martinez-Pilia's claims are conclusory, refuted by the record, and subject to dismissal. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *Ross v. Estelle,* 694 F.2d 1008, 1011 ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and

federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value"); *Miller v. Johnson*, 200 F.3d 274, 282 (conclusory allegations of deficient performance and prejudice do not satisfy *Strickland's* two-pronged test); *United States v. Fields*, 565 F.3d 290, 298 ("If, on the record before us, 'we can conclude as a matter of law that [the petitioner] cannot establish one or both of the elements necessary to establish his constitutional claim, then an evidentiary hearing is not necessary[.]'") (citing *United States v. Walker*, 68 F.3d 931, 934); *Sevim v. United States*, 2018 WL 4762140, at *3 ("Conclusory allegations of ineffective assistance of counsel are insufficient to warrant an evidentiary hearing or to support relief pursuant to section 2255.") (citing *United States v. Demik*, 489 F.3d 644, 647).

> **D.    Martinez-Pilia's claim that Zayas performed ineffectively by promising him that he would get a lower sentence if he agreed to plead guilty**. Martinez-Pilia asserts that Zayas induced him to pleading guilty with the promise of a lower sentence.  Dkt. No. 1 at 4 ("A ONE POINT MY ATTORNEY PROMISED TO ME THE I WAS GOING TO GET A LOWER SENTENCE THEY I ONLY HAVE TO PLEA GUILTY[.]" (errors in original).  Aside from contending that Zayas "pushed him" to plead guilty (*id.* at 5), Martinez-Pilia does not specify the length of the sentence allegedly promised to him, or provide any other details regarding Zayas's alleged inducement.

Zayas states that she did not promise Martinez-Pilia that he would get a lower sentence if he entered a guilty plea.  Dkt. No. 20 at p. 11 ¶ 27, and p. 14 ¶ 39.  During his re-arraignment, Martinez-Pilia confirmed that no one "made any promises or

assurances of any kind" to persuade him to plead guilty. CR Dkt. No. 27 at 7. He also confirmed that he was pleading guilty voluntarily, because he was guilty, and that no one had coerced him into pleading guilty. *Id.* Martinez-Pilia has produced no facts or evidence to contradict Zayas's affidavit, or his own statements in open court. As such, he has not demonstrated that Zayas performed ineffectively by promising him a lower sentence in exchange for a guilty plea.

Relatedly, Martinez-Pilia has not shown that Zayas induced Martinez-Pilia to plead guilty by giving him ineffective or prejudicial advice. In her affidavit, Zayas explains that she informed Martinez-Pilia that he was facing a sentencing guideline range of 77-96 months imprisonment if he did not plead guilty, and 57-71 months imprisonment if pleaded guilty and received a 3-level reduction for accepting responsibility. Dkt. No. 20 at 4-5, ¶¶ 8-9. She notes that the United States Probation Office prepared a Presentence Investigation Report ("PSIR") which provided a different, but incorrect, calculation. *Id.* at pgs. 8-9, ¶¶ 19-20. That is, because it failed to properly account for Martinez-Pilia's conviction for possession of marihuana, the PSIR provided a sentencing guideline range of 37-46 months of imprisonment. *Id*; *see also* CR Dkt. No. 15 at pgs. 4-8, 10 (PSIR). Prior to sentencing, the Government discovered the error, but did not object. CR Dkt. No. 28 at 7. Instead, the Government asked that the Court sentence Martinez-Pilia to 41 months imprisonment and refuse to grant any further downward departures. *Id.* The Court sentenced Martinez-Pilia to 38 months of imprisonment. *Id.* at 7-8.

Thus, even if Martinez-Pilia decided to plead guilty after receiving Zayas's advice, he has not demonstrated that her advice constituted prejudicial, ineffective

assistance. As the Government notes, Martinez-Pilia received a lower sentence because he chose to plead guilty. *See* Dkt. No. 25 at p. 2, p. 4 n. 5 (explaining that, in pleading guilty, Martinez-Pilia received a lower sentence because he received a three-point reduction for accepting responsibility in addition to "the benefit of a four-level reduction because of a miscalculation of the guidelines in the PSR"). Martinez-Pilia has produced no facts or evidence to the contrary. Accordingly, his claim should be dismissed because it is conclusory and refuted by the record. *See Blackledge v. Allison,* 431 U.S. 63, 74 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *Ross,* 694 F.2d 1008, 1011 ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value"); *Miller,* 200 F.3d 274, 282 (conclusory allegations of deficient performance and prejudice do not satisfy *Strickland's* two-pronged test); *Fields,* 565 F.3d 290, 298 ("If, on the record before us, 'we can conclude as a matter of law that [the petitioner] cannot establish one or both of the elements necessary to establish his constitutional claim, then an evidentiary hearing is not necessary[.]'") (citing *Walker,* 68 F.3d 931, 934); *Sevim,* 2018 WL 4762140, at *3 ("Conclusory allegations of ineffective assistance of counsel are insufficient to warrant an evidentiary hearing or to support relief pursuant to section 2255.") (citing *Demik,* 489 F.3d 644, 647).

**E. Martinez-Pilia's claim that Zayas performed ineffectively by failing to file a motion to get his sentence reduced**. Martinez-Pilia states that Zayas "PROMISED TO ME THE I WAS GOING TO FILE A MOTION TO THE COURT TO GET MY TIME REDUCTION TO 24 TO 36 THES WHAT ATTORNEY PROMISED[.]" Dkt. No. 1 at 11 (errors in original). He also alleges that the "DA*[9] TOLD ME THE HE WAS GOING TO FILE A MOTION TO THE COURT TO GET MY TIME REDUCTION BECAUSE THE DAJ TOLD HEM." *Id.* at 4 (errors in original). Martinez-Pilia's claim here is limited to these two statements. He has provided no other evidence or facts to support his allegations.

Zayas disputes Martinez-Pilia's claim, noting that she did not make any promises and specifically told Martinez-Pilia that the Government was unlikely to agree to any further sentence reductions. Dkt. No. 20 at p. 11, ¶ 27 and p. 14 at ¶39. Martinez-Pilia has not shown that he was entitled to a reduction of his sentence, nor has he shown that a further reduction in his sentence was even possible. His claim is unsupported, conclusory, and subject to dismissal with prejudice. *See Ross,* 694 F.2d 1008, 1011 ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value"); *Miller,* 200 F.3d 274, 282 (conclusory allegations of deficient performance and prejudice do not satisfy *Strickland's* two-pronged test); *Fields,* 565 F.3d 290, 298 ("If, on the record before us, 'we can conclude

---

[9]  In quoting Martinez-Pilia, the Court uses asterisks to mark the places where Martinez-Pilia's handwriting is illegible.

as a matter of law that [the petitioner] cannot establish one or both of the elements necessary to establish his constitutional claim, then an evidentiary hearing is not necessary[.]'") (citing *Walker*, 68 F.3d 931, 934); *Sevim*, 2018 WL 4762140, at *3 ("Conclusory allegations of ineffective assistance of counsel are insufficient to warrant an evidentiary hearing or to support relief pursuant to section 2255.") (citing *Demik*, 489 F.3d 644, 647).

**F. Martinez-Pilia's claim that, due to his limited understanding of English and the law, and due to Zayas's ineffectiveness, he did not receive a fast-track policy reduction in his sentence.** In support of this claim, Martinez-Pilia describes his understanding of a fast-track policy and indicates that he qualified for a fast-track policy sentence reduction. Dkt. No. 1 at 8-9. In relevant part, he states:

> DUE TO MY LIMITED KNOWLEDGE OF THE LAWS I WENT TO COURT WITHOUT THE FULL WHAT WAS IN COURT BECAUSE OF MY LIMITED AND THE LAWS A ONE POINT MY ATTORNEY TOLD ME THE A WAS QUALIFYING FOR THE "FAST TRACK" BECAUSE "FAST TRACK" POLICY FOR ILLEGAL REENTRY PROSECUTORS "DEAR JUDGE OLVERA" THE UNITED STATES ATTORNEY HAS ADOPTED A NEW FAST TRACK" POLICY FOR THE PROSECUTION OF ILLEGAL REENTRY CASES THIS POLICY IS THE PRODUCT OF A NATIONWIDE DEPARTMENT OF JUSTICES EFFORT TO ENSURE THAT EVERY THAT EVERY DISTRICT HAS AN ILLEGAL "FAST TRACK" POLICY IN PLACE.

*Id.* (errors in original, formatting altered).

In *United States v. Gomez-Herrera*, the Court of Appeals for the Fifth Circuit described the purpose and history of "fast-track" programs. 523 F.3d 554, 559-60 (5th Cir. 2008).

[F]ast-track programs originated in the Southern District of California and later spread to other districts along the southwest border, where the number of illegal re-entry cases was overwhelming the capacity to prosecute violators.  The United States Attorneys in those districts created the programs that offered defendants who violated 8 U.S.C. § 1326 an array of options, such as plea agreements and recommendations for reduced sentences, in return for the defendants' waiver of various rights, including: indictment by a grand jury, trial by jury, presentation of a pre-sentence report, and appellate review of the sentence.

In 2003, Congress approved such programs in section 401(m)(B) of the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act ("PROTECT Act").  That statute instructed the United States Sentencing Commission to issue a policy statement authorizing a downward departure "pursuant to an early disposition program authorized by the Attorney General and the United States Attorney", which the Sentencing Commission did in U.S.S.G. § 5K3.1. Pub.L. No. 108-21, 117 Stat. 650, 675 (2003) (codified in scattered sections of 18, 28, and 42 U.S.C.).

In September 2003, the Attorney General set forth the general criteria that must be satisfied in order to obtain the Attorney General's authorization for "fast-track" programs. . . . *Memorandum from Attorney General John Ashcroft Setting Forth Justice Department's "Fast-Track" Policies* (Sept. 22, 2003), 16 Fed. Sent. Rep. 134, 2003 WL 23475483, at *2 (Dec. 2003).  Once the program is authorized, the United States Attorney may implement the program as he deems appropriate for his district, provided that the program is otherwise consistent with the law, the Sentencing Guidelines and Department regulations and policy. *Id.*

*Id.* (citing *United States v. Mejia*, 461 F.3d 158, 160-61 (2d Cir. 2006)).

In 2012, the Department of Justice revised and clarified its policies regarding fast-track programs in a Memorandum to Prosecutors from Deputy Attorney General James M. Cole (hereinafter, the "Cole Memorandum").  *DOJ Memo to Prosecutors: Department Policy on Early Disposition or "Fast-Track" Programs*, 2012 WL 6620439, 25 FED. SENT. R. 53, 53 (2012).  The Cole Memorandum recites the minimum requirements for fast-track plea agreements as follows:

The defendant must enter into a written plea agreement that includes at least the following items—

(1) The defendant agrees to a factual basis that accurately reflects his or her offense conduct and stipulates to the facts related to the prior conviction and removal;

(2) The defendant agrees not to file any of the motions described in Rules 12(b)(3), FED. R. CRIM. P.;

(3) As determined by the United States Attorney after taking into account applicable law and local district court practice and policy, the defendant agrees to waive the right to argue for a variance under 18 U.S.C. § 3553(a), and to waive appeal and the opportunity to challenge his or her conviction under 28 U.S.C. § 2255, except on the issue of ineffective assistance of counsel; and

(4) The United States Attorney shall retain discretion to impose additional procedural requirements for fast-track plea agreements; specifically, the United States Attorney has discretion to require that the defendant agree to enter into a sentencing agreement pursuant to FED. R. CRIM. P. 11(c)(1)(C), and/or to waive a full pre-sentence investigation as [a] condition[ ] of participation.

*Id.* at 55-56.

The Cole Memorandum also provides that the United States Attorney may restrict a defendant's eligibility to participate in a fast-track program. *DOJ Memo to Prosecutors: Department Policy on Early Disposition or "Fast-Track" Programs*, 2012 WL 6620439, at *55.

A. Defendant Eligibility. The United States Attorney retains the discretion to limit or deny a defendant's participation in a fast-track program based on—

(1) The defendant's prior violent felony convictions (including murder, kidnapping, voluntary manslaughter, forcible sex offenses, child-sex offenses, drug trafficking, firearms offenses, or convictions which otherwise reflect a history of serious violent crime);

(2) The defendant's number of prior deportations, prior convictions for illegal reentry under 8 U.S.C. § 1326, prior convictions for other immigration-related offenses, or prior participation in a fast-track program;

(3) If the defendant is part of an independent federal criminal investigation, or if he or she is under any form of court or correctional supervision; or

(4) With supervisory approval, circumstances at the time of the defendant's arrest or any other aggravating factors identified by the United States Attorney.

*Id.* (errors in original).

The choice to initiate the fast-track plea agreement process lies with the Government, not the defendant. *See United States v. Gomez-Herrera*, 523 F.3d. 554, 561 (citing *United States v. Zapata-Parra*, 268 Fed. Appx. 692, 2008 WL 193210, at *1 (10th Cir. January 23, 2008) (unpublished)); *see also United States v. Martinez-Trujillo*, 468 F.3d. 1266, 1269 (10th Cir. 2006) ("The decision that a defendant be 'fast-tracked' is not made by the defendant but by the United States Attorney."); *United States v. Miranda-Garcia*, No. 6:05-CR-202-ORL-31DAB, 2006 WL 1208013, at *1 (M.D. Fla. May 4, 2006) ("[O]nly the government can file a motion for downward departure pursuant to an early disposition program."). Therefore, "where a defense attorney fails to ask for a fast-track sentence reduction his failure will not constitute ineffective assistance of counsel, and will not be deemed to prejudice the defendant." *Lona-Ramirez v. United States*, Civil No. B-12-103, 2013 WL 2297260, at *5 (S.D. Tex. May 24, 2013) (citing *Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006); *Martinez–Valdez v. United States*, No. EP–11–CV–68–PRM, 2011 WL 3666606 (W.D.

Tex., July 19, 2011); *United States v. Lumbreras–Amaro*, 627 F.Supp.2d 752, 761 (S.D. Tex., 2008)).

Here, the Government argues that Martinez-Pilia was not eligible for fast-track program consideration due his prior convictions for robbery and illegal reentry. Dkt. No. 25 at 24.

> Further, even if Martinez[-Pilia] could establish that his prior convictions did not render him ineligible, he "does not argue that he offered to meet the minimum requirements for participation in a fast track program; i.e. that he enter into a plea agreement, agree to a factual basis, agree not to file any of the motions described in FED. R. CRIM. P. 12(b)(3), agree to waive appeal and agree to waive the opportunity to challenge his conviction under 28 U.S.C. § 2255." *Gomez Herrera*, 523 F.3d at 563.

*Id.* Zayas concurs, stating that Martinez-Pilia was not eligible for fast-track program consideration. Dkt. No. 20 at p. 13, ¶ 36. Martinez-Pilia has not demonstrated otherwise, and his records reveal prior convictions for robbery and illegal reentry. CR Dkt. No. 17. Accordingly, Martinez-Pilia's claim here is conclusory and belied by the record. He has not shown that Zayas provided ineffective assistance of counsel, nor has he shown that he was prejudiced by her performance or his own limited understanding of English and the law. His claim is subject to dismissal with prejudice. *See See Ross,* 694 F.2d 1008, 1011 ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value"); *Miller*, 200 F.3d 274, 282 (conclusory allegations of deficient performance and prejudice do not satisfy *Strickland's* two-pronged test); *Fields*, 565 F.3d 290, 298 ("If, on the record

before us, 'we can conclude as a matter of law that [the petitioner] cannot establish one or both of the elements necessary to establish his constitutional claim, then an evidentiary hearing is not necessary[.]'") (citing *Walker*, 68 F.3d 931, 934); *Sevim*, 2018 WL 4762140, at *3 ("Conclusory allegations of ineffective assistance of counsel are insufficient to warrant an evidentiary hearing or to support relief pursuant to section 2255.") (citing *Demik*, 489 F.3d 644, 647).

## V. Conclusion

The claims contained in Martinez-Pilia's § 2255 Motion are unsupported and belied by the record.  Therefore, no evidentiary hearing is proper and his claims should be dismissed with prejudice. *See Clark v. Collins*, 19 F.3d 959, 964 (5th Cir. 1994) ("The district court need not hold an evidentiary hearing to resolve ineffective assistance claims where the petitioner has failed to allege facts which, if proved, would admit of relief or where the [court's] record suffices for their disposition.") (citations omitted); *Fields*, 565 F.3d 290, 298 ("If, on the record before us, 'we can conclude as a matter of law that [the petitioner] cannot establish one or both of the elements necessary to establish his constitutional claim, then an evidentiary hearing is not necessary[.]'") (citing *Walker*, 68 F.3d 931, 934).

## VI. Certificate of Appealability

A certificate of appealability shall not issue unless the movant makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). This requires a "showing that reasonable jurists could debate whether (or, for that

matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (internal quotations and citations omitted). Stated differently, where claims have been dismissed on the merits, the movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. Where claims have been dismissed on procedural grounds, the movant/petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

District courts may deny certificates of appealability sua sponte, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability should not issue in this case because Martinez-Pilia has not made a substantial showing of the denial of a constitutional right.

## VII. Recommendation

It is recommended that the Court **DISMISS** Martinez-Pilia's Motion with prejudice and **DECLINE** to issue a certificate of appealability.

## VIII. Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within

fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Signed on this 19th day of October, 2018.

Ignacio Torteya, III
**United States Magistrate Judge**